Ernest Ellison Auditor General Tallahassee
QUESTIONS:
1. Would the provisions of Ch. 61-1412, Laws of Florida, apply to obligations issued pursuant to the provisions of Ch. 28870, 1953, Laws of Florida, so as to require that the first $15,000 of recetrack moneys allocatable to Alachua County be sent directly to the board of county commissioners of said county prior to making the apportionment between said board and the district school board as set forth in Ch. 61-1412?
2. If question 1 is answered in the affirmative, would this requirement that the first $15,000 be given directly to the county prior to apportionment continue to be operative after the obligations authorized by Ch. 28870, 1953, Laws of Florida, had been retired?
3. Do the provisions of Ch. 61-1412, Laws of Florida, apply to obligations which are issued subsequent to the effective date of said law and which commit racetrack moneys for their payment?
4. Was Ch. 61-1412, Laws of Florida, converted to an ordinance of Alachua County by the provisions of Ch. 71-29, Laws of Florida?
SUMMARY:
The first $15,000 of racetrack money alloted to Alachua County, which was required by local act to be pledged toward revenue certificates issued thereunder, constituted `committed funds,' and as such were not subject to a later population act, since the distribution formula in this second act applied only to `uncommitted' racetrack funds. The requirement for setting aside the first $15,000 of racetrack funds for the payment of obligations thereunder no longer applied once the obligations had been retired. The distribution formula set out in the second local act (Ch. 61-1412, Laws of Florida) may not be applied to racetrack funds which have been pledged to the payment of obligations issued by the Alachua County Board of Commissioners subsequent to the effective date of Ch. 61-1412. Chapter 61-1412 was converted into a county ordinance of Alachua County by the provisions of Ch. 71-29, Laws of Florida.
As these questions are interrelated, I will combine them and issue one answer.
Your letter advises that, pursuant to authorization found in Ch. 28870, 1953, Laws of Florida (which was converted to a county ordinance by Ch. 75-326, Laws of Florida), the Board of County Commissioners of Alachua County issued certificates of indebtedness to finance the construction of a health center. These certificates were `to mature serially in annual installments over a period not exceeding fifteen years from the date of issuance thereof . . . .' Section 1, Ch. 28870. Section 3 of Ch. 28870 requires the board to `appropriate and set aside' the first $15,000 of racetrack funds distributable to the county under Ch. 550, F. S., for the purpose of paying the principal and interest on the certificates. This section continues as follows:
 . . . The monies herein required to be appropriated and set aside for the purpose in this section provided, are hereby pledged to the payment of the principal of and interest on the Certificates of Indebtedness as same shall mature and become due, and the Certificates of Indebtedness shall have a lien on such monies until payment in full of the principal of and interest on said Certificates of Indebtedness has been made. . . . (Emphasis supplied.)
You indicate, however, that you are uncertain as to the construction and effect of Ch. 28870, 1953, Laws of Florida, because of Ch. 61-1412, Laws of Florida, a `population act' which at the time of its enactment applied to Alachua County. Chapter 61-1412, it should be noted, was repealed by Ch. 71-29, Laws of Florida, and converted to a county ordinance.
I might note at this point that this opinion is limited to a discussion of Chs. 28870 and 61-1412, supra; no other special laws or general laws of local application governing the distribution of racetrack funds for the purpose of payment of obligations issued by the Board of County Commissioners of Alachua County have been brought to my attention.
Chapter 61-1412, Laws of Florida, provides that the `uncommitted' racetrack funds of the county shall be distributed as follows: `one-third (1/3) to the county commission, two-thirds (2/3) to the county school board.' The act defines `uncommitted funds' to mean `those funds which have not been committed by the board of county commissioners to pay off outstanding indebtedness.' (Emphasis supplied.)
I have been advised that the certificates issued under Ch. 28870, 1953, Laws of Florida, have apparently been paid, although the exact date of the retirement is uncertain. However, it is estimated that the obligations were retired in 1968, approximately 15 years after the issuance of the certificates. In addition, although the laws in question have now been converted to ordinances, which may be amended or repealed at the discretion of the board of county commissioners, I have been advised that the questions presented by your inquiry continue to require resolution by this office.
With respect to your first question, it seems clear that the $15,000 of racetrack funds, which the board was required to set aside and `pledge' toward the payment of the principal and interest of the revenue certificates, constituted `committed' funds which were not subject to the apportionment formula set forth in Ch. 61-1412, Laws of Florida. See Webster's ThirdInternational Dictionary, p. 457, which defines `commit' to mean `to pledge to some particular course or use.' It is equally clear, however, that, once the certificates were paid off, the portion of Ch. 28870, 1953, Laws of Florida, which required the board to set aside $15,000 would no longer have any operative effect. See AGO 056-319 in which this office ruled that a portion of a special act which required that 10 percent of the racetrack funds be allocated to the county for the purpose of paying off revenue certificates issued to finance construction of a gymnasium was no longer operative once the gymnasium had been constructed and the certificates issued to finance the building had been paid; thereafter, the racetrack funds were to be distributed in accordance with other special acts governing the allocation of racetrack funds in the county. Thus, your second question must be answered in the negative.
As to your third question, an examination of Ch. 61-1412, Laws of Florida, does not reveal any indication that the Legislature intended that the act operate only upon obligations issued prior to the effective date of the act. The title of the act simply provides `for the allocation and distribution of racetrack funds to the county commission and the school board,' and the body of the act defines the formula for distribution of `the uncommitted racetrack funds of such counties.' In the absence of any such clear expression of legislative intent, I am of the view that racetrack funds which have been pledged toward the payment of obligations issued by the Board of County Commissioners of Alachua County subsequent to the effective date of Ch. 61-1412 constitute committed funds, and, therefore, such funds are not subject to the distribution formula set forth in that act. As previously noted, however, Ch. 61-1412 is now merely an ordinance of Alachua County and may be repealed or modified by the county commission should that body choose to do so. See s. 3(2), Ch. 71-29, Laws of Florida.
Your fourth question may be answered by reference to AGO 079-6, in which I concluded:
 A county, when attempting to determine whether or not a particular general law of local application was repealed or converted to a county ordinance by the provisions of Ch. 71-29, Laws of Florida, and thus authorized to continue as a local enactment by a particular county, should apply the population figures for said county found in the 1960 federal decennial census. (Emphasis supplied.)
Thus, inasmuch as Alachua County, under the 1960 census, was within the population brackets set forth in Ch. 61-1412, Laws of Florida, that law is now an ordinance of the county.
To summarize, it is my opinion that the first $15,000 of racetrack moneys allocated to Alachua County, which were required by special law (Ch. 28870, 1953, Laws of Florida, converted to a county ordinance by Ch. 75-326, Laws of Florida) to be pledged toward the payment of revenue certificates issued thereunder, constituted `committed' funds. Therefore, such funds were not subject to the racetrack funds distribution formula set out in a later population act (Ch. 61-1412, Laws of Florida, converted to an ordinance of Alachua County by Ch. 71-29, Laws of Florida) since the distribution formula set forth therein was applicable only to `uncommitted' racetrack funds. The requirement in Ch. 28870, that the Board of County Commissioners of Alachua County set aside the first $15,000 of racetrack funds for the payment of obligations issued thereunder, was no longer operative once the obligations had been retired. The distribution formula set out in Ch. 61-1412 is not applicable to racetrack funds which have been pledged toward the payment of obligations issued by the board of county commissioners subsequent to the effective date of Ch. 61-1412; which was converted to an ordinance of Alachua County by the provisions of Ch. 71-29.
Prepared by:
Patricia R. Gleason Assistant Attorney General